# JOHNSON *v.* TRIBBY.

STATUTE OF FRAUDS; MEMORANDUM IN WRITING; SPECIFIC PERFORMANCE;
BONA FIDE PURCHASER; AGENCY.

1. A writing as follows: "Washington, D. C., October 6, 1904. Received of
   Charles E. Tribby fifty dollars in part payment for lot No. 115, sq.
   1242, to be conveyed to him by us in fee ($5,300) simple on October 8,
   1904,"—signed by the vendees, is a sufficient memorandum in writing
   within the statute of frauds (sec. 1117, D. C. Code [31 Stat. at. L.
   1367, chap. 854]), although it does not appear from such writing wheth-
   er the purchase price is to be paid in cash, or by the assumption of
   certain trusts upon the property. (Distinguishing *Waters* v. *Ritchie*,
   3 App. D. C. 379.)
2. *Quære*, Whether the statute of frauds must be pleaded in order to be
   taken advantage of by the defendant.
3. Where there is a dispute between the parties to a contract for the sale
   of land as to the amount to be paid, the party claiming to be entitled
   to the specific performance of the contract may file a bill in equity
   for a performance, and submit the amount to be paid by him to the
   judgment of the court.
4. Where an agent buys land for his principal with knowledge that the
   vendor has contracted to sell it to another, the deed to his principal
   will be declared void at the suit of the original vendee, although such
   principal has no actual knowledge of the prior contract.

No. 1630. Submitted March 9, 1906. Decided April 3, 1906.

HEARING on an appeal by the defendant from a decree of the
Supreme Court of the District of Columbia annulling a convey-
ance.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by Charles F. Johnson, one of the defend-

ants below, from a decree of the supreme court of the District
of Columbia, adjudging that a certain deed in fee simple, exe-
cuted and delivered to him by two of his codefendants, Annie
Lee Beverley and Elizabeth Lawrence Talty, is fraudulent,
null, and void, and vacating and canceling it. The decree
further provides that Beverley and Talty are to execute and
deliver to the appellee, Charles E. Tribby, upon his making a
certain payment, a deed conveying the same premises as former-
ly conveyed to the appellant, subject to two certain deeds of
trust on the said premises. Only the defendant Johnson per-
fected his appeal.

The record discloses that on October 5, 1904, Annie L. Bever-
ley and Elizabeth L. Talty were the owners of lot 115, square
1242, in the city of Washington, upon which there were two
deeds of trust, one to secure the payment of $4,750, the other to
secure a smaller sum. On the same day they gave Tribby, the
appellee, a second deed of trust to secure the payment of eight
notes for $45.60 each, with interest.

Negotiations were entered into between Beverley and Talty
and Tribby for the purchase of the lot in question, which re-
sulted in an agreement on the following day for its purchase
by Tribby, who made them a payment of $50 on account. The
only writing that passed between the parties at that time was
the following:

Washington, D. C., October 6, 1904.

Received of Charles E. Tribby fifty dollars in part payment
for lot No. 115, sq. 1242, to be conveyed to him by us in fee
[$5,300] simple on October 8, '04.

$50                                        Annie Lee Beverley.
                                            Elizabeth L. Talty.

The figures in brackets were inserted by Tribby, whether
before or after the paper was signed or whether inserted with
the knowledge or consent of Beverley and Talty, is the sub-
ject of conflicting testimony. Upon the written orders of
Mrs. Beverley two further sums of $50 and $20, respectively,
were given by Tribby to Mrs. Talty, the former sum on Oc-

tober 10, 1904, two days after the day when the deed was to have been given. This shows that the owners of the property waived the condition as to time of closing the bargain, although the testimony shows that Tribby was prepared to close on the day named in the paper. On the 13th of the same month Mrs. Beverley and Mrs. Talty came to Tribby's office, but refused to execute the deed, although the sum of $110.19, representing the balance due them, was tendered by Tribby.

They claimed that a larger sum was due them, and that they had been advised by an attorney that if they had not executed the deed it was not considered a sale. It further appears that after the agreement with Tribby Mrs. Beverley and Mrs. Talty went to Willige, Gibbs, & Daniel and entered into negotiations with Mr. Daniel to sell the property in question; that he learned from them of their negotiations with Tribby and advised them to consult a lawyer, and that if they were advised that they could legally withdraw from their negotiations with Tribby, he would take up the matter with them; that the attorney he advised them to consult was the attorney of his corporation; that on October 21st that attorney called on Tribby and tendered to his representative the sums paid by Tribby on account of the purchase, and also served written notice that all negotiations were ended because of Tribby's alleged failure to carry out the agreement; that thereupon they sold the property to the appellant, Johnson, the deed being executed October 26, 1904. It further appears that appellant was the treasurer of Willige, Gibbs, & Daniel at the time when the sale was made, and that corporation, by Daniel, its secretary, acknowledged the receipt from Johnson of $100 to be applied as part payment on the purchase of the property. It appears that Johnson knew nothing of the purchase of the property until the deed was recorded, and that Daniel claimed to act for him as well as for the sellers. Such other alleged facts as may need to be considered will be referred to in dealing with the assigned errors.

*Mr. Wharton E. Lester* and *Mr. Walter C. Balderston* for the appellant.

*Mr. Howard Boyd* for the appellee.

Mr. Justice Duell delivered the opinion of the Court:

1. It is urged on behalf of appellant that the court erred in holding that there was any valid, enforceable contract between Tribby and Beverley and Talty, or that the evidence establishes it. This is the substance of the first and fourth errors assigned. If the paper executed by Beverley and Talty is sufficient to satisfy the statute of frauds as embodied in section 1117 of the District Code (31 Stat. at L. 1367, chap. 854), then it follows that there was between the parties a valid and enforceable contract. The provision of the section applicable to the transaction under review recites that "no action shall be brought * * * upon any contract or sale of lands * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, which need not state the consideration, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

The instrument relied on is an acknowledgment of the receipt by Beverley and Talty from the appellee of the sum of $50 in part payment for lot No. 115, square 1242, which was to be conveyed to him by them in fee simple on October 8, 1904. It is dated Washington, D. C., October 6, 1904, and signed by the sellers, and contains the figures "$5,300," the latter having been inserted either just before or after the paper was signed, but with the knowledge of the parties executing the paper. We consider the instrument sufficient to show the promise, the location of the property, the parties, the amount to be paid, and the time when the sale was to be consummated. The caption of the receipt sufficiently locates the lot as being within the city of Washington. The instrument should be taken as an entirety.

Beverley and Talty agreed to sell to Tribby a certain lot, in a certain city, for an agreed sum, and they agreed to convey it upon a day certain, by deed in fee simple, and at the time of executing such agreement the latter paid a certain sum as part payment for the lot. We think this satisfies the requirements of section 1117 of the District Code.

In *Ryan* v. *United States,* 136 U. S. 68, 34 L. ed. 447, 10 Sup. Ct. Rep. 913, it was held that it was not essential, in order to satisfy the Michigan statute of frauds, that the memorandum for the sale of real estate should be so specific as to render a resort to extrinsic evidence needless, when the writing comes to be applied to the subject-matter.

There a complete contract was gathered from letters, telegrams, and other writings passing between the parties. The statute was, so far as it relates to the sale of lands, in substance, the same as our statute. Here there is no need of extrinsic evidence, or, if any, only as to the method of payment,— whether by the assumption of trusts or by cash. If the trusts referred to in the record were not to be assumed by Tribby, then, before paying over the consideration, he was entitled to have the trusts satisfied by the vendors. We think there was an enforceable contract for the purchase and sale of the lot entered into between Tribby and Beverley and Talty. The essential terms thereof can be ascertained from the writing itself.

"Any note or memorandum in writing which furnishes evidence of a complete and practicable agreement is sufficient under the statute, and parol evidence is admissible to explain latent ambiguities, and to apply the instrument to the subject-matter." *Williams* v. *Morris,* 95 U. S. 444, 456, 24 L. ed. 360, 362. In *Waters* v. *Ritchie,* 3 App. D. C. 379, this court held that if the caption of the contract was imported into the contract the location of the lots would be in Washington, while the bill of complaint described the property as in Georgetown. We do not consider that case in point, and, further, it appears that a rehearing was granted in the case.

2. Our holding that the writing is a sufficient compliance with section 1117 of the Code renders it unnecessary for us to decide whether the defendants below waived their right to the benefit of the statute of frauds by failing to plead it. This brings us to the third error assigned, which is that Tribby's tender was insufficient to sustain a bill for specific performance. It is urged by appellant that the deed did not provide for the assumption of either of the trusts. It appears that the deed tendered recited the $4,750 trust, and that by the

terms of the deed the conveyance was to be made subject to it.

Conceding that the deed should have been drawn providing for the assumption of both the trusts by the appellee, it does not appear that the vendors indicated any such defect or omission in the deed, or expressed any dissatisfaction with its provisions. Their refusal to execute it was based upon the ground that they wanted more money, that more money was due them than was tendered. In other words, there was a dispute between the parties as to the balance to be paid. Where there is such uncertainty one claiming to be entitled to the specific performance of a contract may file a bill for a performance and submit the amount to be paid by him to the judgment of the court. *Willard* v. *Tayloe,* 8 Wall. 557, 19 L. ed. 501; *Chesterman* v. *Mann,* 9 Hare, 212.

Were this a case simply between the parties to the contract there would be no question but that, in view of the circumstances of the case, and in the light of all the evidence, the discretion of the court would be properly exercised in decreeing specific performance. The only conclusion deducible from the record is that Beverley and Talty, finding that they could get, as it appeared to them, a little better price for the lot from another party, were anxious to escape from their legal obligations; but, in the absence of proof of any undue advantage having been taken of them, we do not think that they ought to be permitted to do so.

3. This brings us to the remaining question in the case, which is as to Johnson's position in the matter,—whether he is in any better position than his grantors. We think not. Admitting that Johnson was one of the trustees of a fund in the hands of Willige, Gibbs, & Daniel (a corporation) for investment, and that they were authorized to enter into contracts for the investment of that fund without his knowledge and without consulting him, it must be borne in mind that he had no personal knowledge of the contract entered into in his name; that he was an officer of that corporation, and that Daniel, another officer of the corporation, acted as agent for him and for Beverley and Talty. Daniel had knowledge of the relations be-

tween Tribby and Beverley and Talty, and his knowledge, under the circumstances, was the knowledge of Johnson, who is in no better position than Daniel was to plead innocence or good faith. Daniel could not have been an innocent purchaser, and his principal, Johnson, is therefore not such a purchaser. The deed given Johnson was in fraud of Tribby's legal rights, and all the facts being known to Daniel, and through him to Johnson, the court below was right in holding the deed to him to be null and void.

A specific performance of the Tribby contract was rightfully directed by the trial court. Before that could be decreed it was necessary to vacate and cancel the deed to Johnson, and, for the reasons stated, it was proper to annul it and hold it for naught.

Perceiving no substantial error in the record, the decree of the court below must be affirmed with costs.          *Affirmed.*